UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| D.F., a minor, and W.F., a minor, *By and Through Their Parent and Natural Guardian, Carmen Dolmus* <br><br> Plaintiffs <br><br> v. <br><br> CMBK RESORT OPERATIONS, LLC, <br><br> Defendant. | CIVIL ACTION NO. 3:23-CV-00517 <br><br> (MEHALCHICK, J.) |

**MEMORANDUM**

Presently before the Court is a motion to dismiss filed by Defendant Camelback Resort Operations, LLC ("CMBK") on September 11, 2023. (Doc. 18). Plaintiffs D.F. and W.F., both minors, (collectively, "Plaintiffs") filed the operative amended complaint on July 21, 2023, by and through their Parent and Natural Guardian, Carmen Dolmus. (Doc. 13). Therein they allege hostile work environment and retaliation claims in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"). (Doc. 13). For the following reasons, CMBK's motion to dismiss will be **DENIED**. (Doc. 18).

I. **BACKGROUND AND PROCEDURAL HISTORY**

The following background is taken from Plaintiffs' amended complaint. (Doc. 13). Plaintiffs allege that from June 2021 to October 2021, D.F., aged sixteen, worked as a hostess at CMBK. (Doc. 13, ¶¶ 16, 26, 33). D.F.'s brother, W.F., aged fourteen, was employed as a busboy at CMBK during that same period. (Doc. 13, ¶ 17). During their employment at CMBK, Plaintiffs regularly worked on the same shift as another employee named Matthew.

(Doc. 13, ¶ 19). Plaintiffs allege that Matthew routinely grabbed and slapped D.F.'s "rear end" when walking by her. (Doc. 13, ¶ 20). Matthew would also routinely call lewd comments to D.F., often within earshot of other employees. (Doc. 13, ¶ 21) These statements include: "shut the fuck up and suck my dick," "dirty fucking ho," and "I fuck her." (Doc. 13, ¶ 21). Matthew also repeatedly called D.F. a "ho." (Doc. 13, ¶ 21). On at least four occasions, D.F. spoke to management about Matthew's sexually harassing behavior. (Doc. 13, ¶ 22). In response to D.F.'s complaints, CMBK management and staff would temporarily have Matthew work in areas away from D.F. (Doc. 13, ¶ 23). However, CMBK never formally reprimanded Matthew or permanently separated him from D.F. (Doc. 13, ¶ 23). This resulted in Matthew continuing to harass D.F. despite her complaints. (Doc. 13, ¶¶ 23-25).

Plaintiffs further allege that Matthew's harassment became so untenable that on October 3, 2021, D.F. called her mother from CMBK while crying. (Doc. 13, ¶ 26). D.F. told her mother about Matthew's ongoing sexual harassment and CMBK's failure to effectively address it. (Doc. 13, ¶ 26). Following the call, D.F.'s mother came to CMBK to intervene and was met by Matthew's mother, who also worked at CMBK. (Doc. 13, ¶¶ 27-28). The ensuing interaction was hostile and resulted in D.F.'s mother retreating from the situation. (Doc. 13, ¶¶ 28-29). Within days of this incident, both D.F. and W.F. were terminated from CMBK. (Doc. 13, ¶¶ 30, 33). When D.F. and W.F.'s mother asked why W.F. was terminated, CMBK's Human Resources responded, "because he is D.F.'s brother." (Doc. 13, ¶ 31).

On December 10, 2021, Plaintiffs timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against CMBK. (Doc. 13, ¶¶ 10-11; Doc. 18-1; Doc. 18-2). Plaintiffs then filed a complaint against CMBK. (Doc. 1). Plaintiffs subsequently filed the operative amended complaint on July 21, 2023. (Doc. 13). Therein,

Plaintiffs assert the following Counts: Count I — Sexually Hostile Work Environment in violation of Title VII, 42 U.S.C. § 2000e *et seq.*; Count II — Retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq.*; Count III — Sexually Hostile Work Environment in violation of the PHRA, 43 P.S. §951; and Count IV — Retaliation in violation of the PHRA, 43 P.S. §951. (Doc. 13, at 7-12).

CMBK filed the instant motion to dismiss on September 11, 2023, and a brief in support of its motion on September 25, 2023. (Doc. 18; Doc. 19). Plaintiffs filed a brief in opposition to CMBK's motion to dismiss on October 10, 2023. (Doc. 22). CMBK filed a brief in reply on October 31, 2023. (Doc. 26). Accordingly, the motion is fully briefed and ripe for disposition. (Doc. 18; Doc. 19; Doc. 22; Doc. 26).

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not

3

entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . . " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a well-pleaded complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d at 347 (citing *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233-234 (3d Cir. 2008)). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 545).

### III. DISCUSSION

#### A. HOSTILE WORK ENVIRONMENT UNDER TITLE VII AND THE PHRA

CMBK argues Plaintiffs have failed to state a claim for a hostile work environment due to sexual harassment under Title VII and the PHRA. (Doc. 19, at 11). According to CMBK:

> Plaintiff D.F.'s hostile work environment claims fail under Title VII and the PHRA as she does not allege facts to support that: (1) she was exposed to "severe or pervasive" sexual harassment within the work environment; and (2) the existence of respondeat superior liability or that CMBK was aware of and failed to exercise reasonable care to address the alleged harassment.
>
> (Doc. 19, at 11).

Plaintiffs refute these contentions, arguing that the amended complaint alleges both severe and pervasive sexual harassment and facts establishing *respondeat superior*, such that they have met their burden at this stage of the litigation. (Doc. 22, at 6, 10).

Courts interpret hostile work environment claims asserted under the PHRA coextensively with Title VII claims. *See Jennings-Fowler v. City of Scranton*, 680 F. App'x 112, 117 (3d Cir. 2017); *see also Verma v. Univ. of Pennsylvania*, No. 11-611, 2012 WL 1835727, at *7 (E.D. Pa. May 18, 2012); *see also Brennan v. Century Sec. Servs.*, No. 3:21-CV-01678, 2023 WL 2504760, at *8 (M.D. Pa. Mar. 14, 2023); *see also Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996). To sufficiently state a claim for a hostile work environment based on sex discrimination, a plaintiff must show "(1) she suffered intentional discrimination 'because of' her gender; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person in the same position; and (5) the existence of *respondeat superior* liability." *Betz v. Temple Health Sys.*, 659 F. App'x 137, 142 (3d Cir. 2016) (quoting *Andrews v. Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990)); *see also Verdu v. Trustees of Princeton Univ.*, No. 20-1724, 2022 WL 4482457, at *5 (3d Cir. Sept. 27, 2022). While the first four elements establish the plaintiff suffered a hostile work environment, the fifth element determines employer liability. *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009). Here, CMBK challenges whether Plaintiffs have sufficiently alleged element two and five, severity or pervasiveness and *respondeat superior* liability. (Doc. 19, at 11). Accordingly, the Court will address each of these elements in turn.

   1. **Severe or Pervasive Sexual Harassment**

To satisfy their burden to allege a hostile work environment claim based on sexual harassment, Plaintiffs must allege harassment that is "severe or pervasive." *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017); *see also Jennings-Fowler*, 680 F. App'x at 117 ("[t]o establish a hostile work environment under Title VII and the PHRA, a plaintiff must allege,

6

*inter alia*, that the discrimination faced was severe or pervasive as determined by the totality of the circumstances"). The distinction between the terms "means that severity and pervasiveness are alternative possibilities: some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct will contaminate the workplace only if it is pervasive." *Castleberry*, 863 F.3d at 264 (quoting *Jensen v. Potter*, 435 F.3d 444, 449 n.3 (3d Cir. 2006)) (internal quotations omitted).[1] For harassment in the workplace to be actionable, "it must be sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment." *Poindexter v. Starbucks York Roasting Plant*, No. 1:21-CV-1847, 2024 WL 3236713, at *10 (M.D. Pa. June 28, 2024) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

District courts are reluctant to dismiss hostile work environment claims at the motion to dismiss stage under consideration of this element, because "the determination of what constitutes 'severe or pervasive' does not lend itself to a 'mathematically precise test,' but instead requires that a court look to the totality of circumstances." *Long v. Pizza Hut (Store# 635008)*, No. CIV.A. 03-0738, 2003 WL 23019186, at *4 (W.D. Pa. Nov. 5, 2003), *report and recommendation adopted* (Nov. 28, 2003) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23-24 (1993)); *see also Moore v. Lower Frederick Township*, No. CV 20-5920, 2022 WL 657068, at *11 (E.D. Pa. Mar. 4, 2022) ("Courts have continually 'shown a reluctance to dismiss a complaint

---

[1] The Third Circuit has clarified that "[t]he correct standard is 'severe *or* pervasive.'" *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017). "We have noted that '[t]he difference [between the two standards] is meaningful' because 'isolated incidents (*unless extremely serious*) will not amount to [harassment].'" *Castleberry*, 863 F.3d at 264 (quoting *Jensen*, 435 F.3d at 449 n.3).

at the [motion to dismiss] stage when the primary challenge to the hostile work environment claim is whether or not the conduct in question is severe and/or pervasive") (citing *Ingram v. Vanguard Grp., Inc.*, No. CIV.A. 14-3674, 2015 WL 4394274, at *19 (E.D. Pa. July 17, 2015)). In analyzing the severity or pervasiveness of a plaintiff's claims, "a court must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). The Court may not "parse[ ] out each event and view[ ] them separately, rather than as a whole." *Mandel*, 706 F.3d at 168.

"When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Poindexter v. Starbucks York Roasting Plant*, No. 1:21-CV-1847, 2024 WL 3236713, at *10 (M.D. Pa. June 28, 2024) (quoting *Harris*, 510 U.S. at 21) (internal quotations omitted). "Less severe isolated incidents which would not themselves rise to the level of discrimination may, when taken together as part of the overall scenario, evidence discriminatory animus, and one severe incident may be enough to create a hostile work environment." *Hoover v. Beacon Container Corp.*, No. 5:23-CV-04630-JMG, 2024 WL 2392999, at *3 (E.D. Pa. May 23, 2024) (quoting *Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 428 (3d Cir. 2020)). However, courts recognize that "'the sporadic use of abusive language, gender-related jokes, and occasional teasing' do not suffice to state a claim under Title VII." *Hoover*, 2024 WL 2392999, at *3 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Here, Plaintiffs allege that "[o]n a routine and pervasive basis, Matthew would touch D.F. inappropriately against her will. (Doc. 13, ¶¶ 20, 21). Plaintiffs also allege that Matthew would make sexual comments and advances towards D.F., saying things like "shut the fuck up and suck my dick," "dirty fucking ho," "I fuck her," and calling her a "ho." (Doc. 13, ¶¶ 20, 21). While CMBK argues that Plaintiffs' allegations are conclusory, claiming that "[D.F.] fails to state how many times she was grabbed or how often the comments she alleges were made . . ." Plaintiffs need not plead severity or pervasiveness with particularity at this stage. (Doc. 26, at 3); see *Trevizo v. Del Toro*, No. 1:23-CV-00508, 2024 WL 1195522, at *5 (M.D. Pa. Mar. 20, 2024) (quoting *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)) (stating in the context of severe or pervasive discrimination, "at the motion-to-dismiss stage, a plaintiff need not prove her case. Rather, the pleading standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].") (internal quotations omitted); see also *Linhart v. Cnty. of Erie*, No. CV 23-114, 2024 WL 1142699, at *5 (W.D. Pa. Mar. 15, 2024) (finding plaintiff had sufficiently pled "severe or pervasive," at the motion to dismiss stage); *cf. Castleberry*, 863 F.3d at 265-66 (holding that plaintiffs pled severe or pervasive conduct: "[w]hether these allegations are true and whether they amount to 'pervasiveness' are questions to be answered after discovery (for example, after determining how many times racial remarks were scribbled on the sign-in sheets)."). Accordingly, Plaintiffs have sufficiently alleged the severe or pervasive element of their claim. (Doc. 13, ¶¶ 20, 21); see *Hoover*, 2024 WL 2392999, at *3 (finding numerous allegations of comments and physical encounters "were not isolated and sporadic incidents. Instead, they were repeated and pervasive, as they occurred more than ten times over the course of a[few months] "); see also *Smith v. RB Distribution, Inc.*, 498 F. Supp. 3d 645, 659

(E.D. Pa. 2020) (disagreeing with defendant's argument that defendant's conduct was "merely 'inappropriate,'" where defendant had subjected plaintiff to sexualized conduct and comments almost every day); *see also Colavecchia v. South Side Area School District*, No. 2:22-CV-01804-CCW, 2023 WL 3043777, at *3 (W.D. Pa. April 21, 2023) (finding plaintiff had sufficiently alleged "severe and pervasive" conduct, as defendant's sexually explicit remarks "were not offhanded," but happened multiple times in a span of six months). On this basis, Defendants' motion to dismiss Count I of the amended complaint is **DENIED**. (Doc. 18).

### 2. *Respondeat Superior*

CMBK argues that it cannot be held liable for D.F.'s sexual harassment under a theory of *respondeat superior*. (Doc. 19, at 14). As CMBK see it, Plaintiffs have "failed to adequately allege either theory of liability [*respondeat superior* or actual/constructive knowledge] to support [their] hostile work environment claim." (Doc. 19, at 14). CMBK avers that Plaintiffs do not allege Matthew was in a supervisory role over them and that Plaintiffs have failed to identify who D.F. complained to in management. (Doc. 19, at 14). Plaintiffs maintain that Plaintiffs have sufficiently alleged that CMBK "knew or should have known of the harassment and failed to take prompt remedial action." (Doc. 22, at 10).

"The basis of an employer's liability for a hostile work environment claim depends on whether the harasser is the victim's supervisor or coworker." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013) (citing *Huston*, 568 F.3d at 104). An employer is vicariously liable to an employee "for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Hitchens v. Montgomery Cty.*, 278 F. App'x 233, 235–36 (3d Cir. 2008) (quoting *Faragher*, 524 U.S. at 807). If, on the other hand, "the person charged with creating the hostile environment is the plaintiff's co-worker,

10

and not a supervisor, liability exists [only] where the [employer] knew or should have known of the harassment and failed to take prompt remedial action." *Hitchens*, 278 F. App'x at 236 (quoting *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999)) (internal quotation marks omitted). If a co-worker engages in unlawful conduct, "the employer could be found liable for negligently failing to discover the discrimination or failing to respond to the harassment." *Bility*, 2024 WL 1156625, at *5 (citing *Huston*, 568 F.3d at 104-05); *see also Huston*, 568 F.3d at 104-05 ("an employer may be directly liable for non-supervisory co-worker sexual harassment only if the employer was negligent in failing to discover the co-worker harassment or in responding to a report of such harassment"); *see also Lentz v. Gnadden Huetten Mem'l Hosp.*, No. CIV.A. 04-3147, 2004 WL 2514898, at *2 (E.D. Pa. Nov. 8, 2004) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 758 (1998)) ("an employer may be found liable for its negligence in failing to train, discipline, fire or take remedial action upon notice of harassment.").

Here, Plaintiffs do not allege that Matthew was D.F.'s supervisor, but rather "a male Camelback employee . . . who regularly worked on the same shift as D.F. and W.F." (Doc. 13, ¶ 19). Accordingly, Matthew is alleged to be a co-worker, and liability may extend to CMBK only if it "knew or should have known of the harassment and failed to take prompt remedial action." *Hitchens*, 278 F. App'x at 236. Here, that is alleged to be the case. The amended complaint states that D.F. "spoke to managers at [CMBK] whom she believed to be in her chain of command to complain about Matthew's continued unwelcome behavior." (Doc. 13, ¶ 22). As alleged by Plaintiffs, CMBK management and staff's response to D.F.'s complaints was to "temporarily send Matthew to perform other tasks in areas away from D.F. when they would see she was being harassed by him. . ." (Doc. 13, ¶ 23). This allegation

supports that CMBK was directly informed of Matthew's conduct. (Doc. 13, ¶¶ 23, 41). Accordingly, Plaintiffs have satisfied their burden as it relates to the *respondeat superior* element of Plaintiffs' hostile work environment claim. *See Colavecchia*, 2023 WL 3043777, at *3 (citing *Vance v. Ball State Univ.*, 570 U.S. 421, 446 (2013)) (declining to dismiss a retaliation claim asserted under *respondeat superior* because "[plaintiff] alleges that she reported the inappropriate behavior to the principal and the superintendent, but no corrective action was taken, such that *respondeat superior* liability could plausibly exist."); *see also Gallman v. Bethanna Agency*, No. CIV.A. 04-01869, 2004 WL 1622041, at *3 (E.D. Pa. July 20, 2004) (finding plaintiff's allegations were sufficient to give defendant fair notice of the grounds for plaintiff's sexually hostile work environment claim). Accordingly, CMBK's motion to dismiss Plaintiffs' hostile work environment based on sexual harassment claim, Count I of the amended complaint, is **DENIED.** (Doc. 18).

    B.   Retaliation Under Title VII and the PHRA

CMBK argues that Plaintiffs have failed to state a claim for retaliation under Title VII and the PHRA. (Doc. 19, at 17). Plaintiffs refute this contention, averring that they have adequately pled each element of their claim. (Doc. 22, at 11-12). Title VII's anti-retaliation provision "'protects those who participate in certain Title VII proceedings . . . and those who oppose discrimination made unlawful by Title VII . . ." *Ellingsworth v. Hartford Fire Ins. Co.*, 247 F. Supp. 3d 546, 555 (E.D. Pa. 2017) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006) *as amended* (Sept. 13, 2006)). To plead a claim for retaliation under both Title VII and the PHRA, a plaintiff must show that: "(1) [the plaintiff] engaged in conduct protected by Title VII; (2) the employer took adverse action against [plaintiff]; and (3) a causal link exists between [plaintiff's] protected conduct and the employer's adverse action."

12

*Connelly*, 809 F.3d at 788.[2] While CMBK does not dispute that Plaintiffs' termination constitutes an adverse action, it avers that Plaintiffs "have not plausibly pled that they engaged in protected activity or that there was a causal connection between such activity and their termination from employment."[3] (Doc. 19, at 17).

Regarding the first element of Plaintiffs' retaliation claim, Plaintiffs have sufficiently pled that they engaged in protected activity. *See Connelly*, 809 F.3d at 788. An employee "engages in protected activity by complaining to his or her employer about conduct that is prohibited by Title VII." *Ellingsworth*, 247 F. Supp. 3d at 555 (citing *Connelly*, 809 F.3d at 792); *see also Wilson v. Columbia Gas of Pa.*, 676 F. Supp. 3d 424, 438 (W.D. Pa. 2023) ("'opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.'" (citing *Moore*, 461 F.3d at 343)). Here, Plaintiffs allege that D.F. made "good faith complaints of sexual harassment on at least four occasions to individuals she believed to be above her in the chain of command." (Doc. 13, ¶ 22). This allegation is sufficient for Plaintiffs to meet their burden as to the first element

---

[2] Courts refer to both Title VII and PHRA retaliation claims "in the singular because the same framework for analyzing retaliation claims applies to both." *Connelly*, 809 F.3d at 792 (citing *Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 500 (3d Cir.1997)).

[3] The parties do not dispute that Plaintiffs experienced adverse action. (Doc. 19, at 17; Doc. 22, at 11-13). Courts have consistently held that termination of employment qualifies as an adverse action for the purposes of Title VII and the PHRA. *See Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 196 (3d Cir. 2015) (recognizing termination to be an adverse action for the purposes of Title VII and the PHRA); *see also LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (recognizing termination of employment as an adverse action). Because Plaintiffs allege that they were terminated from employment, they have sufficiently pled adverse action. (Doc. 13, ¶¶ 30, 33); *see also Torres v. Jade Mgmt. Inc.*, No. CV 3:23-00930, 2024 WL 219255, at *4 (M.D. Pa. Jan. 19, 2024) ("[plaintiff's] termination certainly qualifies as an adverse act.").

of their retaliation claim. *See Ellingsworth*, 247 F. Supp. 3d at 555-56 (finding plaintiff had sufficiently alleged protected activity in complaining to her supervisor about plaintiff's mistreatment and harassment).

As for the third element of Plaintiffs' retaliation claim, CMBK argues that Plaintiffs have failed to allege a causal link between D.F.'s complaints and CMBK's adverse action; Plaintiffs' termination. (Doc. 19, at 17). When determining whether there is a causal connection between a plaintiff's protected activity and adverse action, courts consider "whether there is an 'unusually suggestive' temporal proximity between the protected activity and adverse action or 'intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for [the adverse action], or any other evidence in the record sufficient to support the inference of retaliatory animus.'" *Sousa v. Amazon.com, Inc.*, No. 22-3043, 2023 WL 7486751, at *4 (3d Cir. Nov. 13, 2023) (quoting *LeBoon*, 503 F.3d at 232-33 (citations and internal quotation marks omitted)). This causation analysis "is highly fact-based, and depends on the particular context in which the events occurred." *Mercer v. Se. Pennsylvania Transit Auth.*, 26 F. Supp. 3d 432, 447 (E.D. Pa. 2014), *aff'd sub nom. Mercer v. SEPTA*, 608 F. App'x 60 (3d Cir. 2015).

Plaintiffs allege they were terminated "within days of D.F.'s complaints even though neither had done anything to justify termination." (Doc. 13, ¶ 33). For the purpose of a motion to dismiss, this allegation supports that there was an unusually suggestive temporal proximity between D.F.'s complaints and Plaintiffs' terminations. *See Mack v. Yost*, 427 F. App'x 70, 73 (3d Cir. 2011) (finding that plaintiff had shown causality by alleging that adverse action was taken one week after plaintiff had engaged in protected conduct); *see also Ellingsworth*, 247 F. Supp. 3d at 557 (finding plaintiff alleged facts sufficient to demonstrate a causal connection

between her protected activity and adverse employment action). Plaintiffs have sufficiently pled there was a causal connection between their protected activity and CMBK's adverse employment action. *See Connelly*, 809 F.3d at 792-93 (finding that, in complaining to management about unwanted advances from a coworker, plaintiff "alleged facts that could support a reasonable inference of a causal connection between her protected activity in May 2010 and the gradual deterioration of her relationship with her employer until she was laid off in October 2010."). As the Court here finds that Plaintiffs have sufficiently pled enough facts to satisfy all three elements of their retaliation claim, CMBK's motion to dismiss Plaintiffs' retaliation claim, Count II of the amended complaint, is **DENIED.** [4] (Doc. 18).

## IV.  CONCLUSION

Based on the foregoing, CMBK's motion to dismiss is **DENIED**. (Doc. 18).

An appropriate Order follows.

Dated: July 31, 2024

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**

---

[4] In a footnote, CMBK argues that Plaintiffs have failed to exhaust their administrative remedies. (Doc. 19, at 15, n.5). To file a lawsuit under Title VII, a plaintiff must exhaust claims at the administrative level. *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001). "The relevant test in determining whether appellant was required to exhaust her administrative remedies ... is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984). This also includes "new acts which occurred during the pendency of the proceedings before the Commission" and "turns on whether the allegations in the judicial complaint are reasonably related to those in the administrative charge." *Ostapowicz v. Johnson Bronze, Co.*, 541 F.2d 394, 398 (3d Cir. 1976); *Kopko v. Lehigh Valley Health Network*, 776 F. App'x 768, 773 (3d Cir. 2019). Here, Plaintiffs filed an EEOC discrimination charge "[o]n or about December 10, 2021," within 180 days of the alleged acts from June to October 2021. (Doc. 13, at ¶¶ 10-11). Plaintiffs have attached their EEOC charges as exhibits to their motion. (Doc. 18-1; Doc. 18-2). Having reviewed the Charges, the Court finds Plaintiffs have sufficiently exhausted their administrative remedies.